No. 13-11815

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

**CHRIST LIBERTY FAMILY
LIFE CENTER,**

      **Plaintiff-Appellant,**

**v.**

**CITY OF AVONDALE ESTATES,
GEORGIA,**

      **Defendant-Appellee.**

_____

Appeal from the United States District Court
For the Northern District of Georgia
No. 10 CV 02326
The Honorable Charles A. Pannell, U.S. District Judge
_____

### BRIEF OF DEFENDANT-APPELLEE
_____

Robert E. Wilson
Stephen G. Quinn
Wilson, Morton & Downs, LLC
125 Clairemont Avenue, Suite 420
Decatur, GA 30030
(404) 377-3638

### ORAL ARGUMENT REQUESTED

# I.  <u>INTRODUCTION</u>

In this Appeal, Appellant Christ Liberty Family Life Center ("Christ Liberty"), through its counsel, Mauck & Baker, LLC, complains that the District Court abused its discretion in awarding $50,340.36 for attorney's fees, costs and expenses under §1983 where Mauck & Baker had requested $291,697.94.  In a comprehensive 42 page Order, District Court Judge Charles A. Pannell, Jr., made findings of fact, cited controlling legal authority for his decision and set forth in detail the reasoning behind the subject attorney's fees award.  Among other findings, the District Court specifically concluded:

- "that a large portion of the hours expended on this case [by Mauck & Baker] was unreasonable" [Doc. 75, pg. 15];

- that this "straightforward case" should have settled "much more cheaply" than the attorney's fees amount requested by Mauck & Baker [Doc. 75, pg. 15];

- that Mauck & Baker's failure to ask for or accept voluntary compliance prior to suit caused unnecessary trouble and expense. [Doc. 75, pg. 19];

- that Mauck & Baker's Legal Services Agreement with its client discouraged billing judgment and induced Christ Liberty to prolong

the litigation after the City voluntarily repealed the complained of

ordinance but refused to pay an exorbitant amount in attorneys' fees.

[Doc. 75, pg. 24];

- that Mauck & Baker unreasonably over billed for preparing initial
  pleadings that were "strikingly similar" to papers filed in a prior case
  in the Northern District of Georgia.  [Doc. 75, pg. 25];

- that Mauck & Baker "prevented resolution of the suit and
  unreasonably inflated the hours expended" by pursuing "unnecessary
  claims and overblown damages".  [Doc. 75, pg. 28];

- that Appellant achieved only "partial success" on its claims and
  actually achieved recovery of only a "miniscule fraction" of the
  damages claimed.  [Doc. 75, pg. 31]; and

- in conclusion, that Mauck & Baker's handling of the matter
  demonstrated "unreasonableness and bad faith."  [Doc. 75, pg. 35,
  41].

This case arose from a claim under the Religious Land Use and

Institutionalized Persons Act of 2000 ("RLUIPA").  When the City was made

aware that its Zoning Ordinance violated RLUIPA it immediately consented to not

enforce its offending provisions and within a matter of days initiated repeal of such

provisions.  Its client church was "very pleased" with being allowed to return to its

building, but Mauck & Baker insisted on pursuing meritless damages claims and a huge attorney's fees payment.  [Doc. 75, pg. 24].  In the end, Mauck & Baker requested almost $300,000 in attorneys' fees for results that could have been accomplished in less than an hour with a phone call or letter.

The question presented by this Appeal is, in light of Mauck & Baker's conduct, was it an abuse of the District Court's broad discretion to award Plaintiff $50,340.36 pursuant to U.S.C.A. § 1988?  Appellee submits that the District Court's award was not only a reasonable exercise of its discretion but quite generous to Mauck & Baker under the circumstances.

## II. FACTUAL AND PROCEDURAL HISTORY

### 1) The Underlying RLUIPA Violation

The City enacted City Zoning Ordinance § 818(1)(A) during the 1970s. The ordinance required religious assemblies to be located on at least three acres of land with one-hundred feet of frontage on a public street. Another provision required any religious facility within Central Business District to obtain a "conditional use permit." [Doc. 75, pgs. 1-2].  These provisions of the City's Zoning Ordinance became in violation of Federal Law in 2000 upon the enactment of the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  Like many other small municipalities, the City was unaware of RLUIPA.  The City enforced its zoning ordinance against Christ Liberty when it discovered that the small church had

opened without a business license, a fire inspection or adequate parking.  [Doc. 75, pg. 2].

### 2)  Mauck & Baker's Legal Services Agreement with Christ Liberty

Christ Liberty engaged Mauck & Baker to represent it and executed a Legal Services Agreement ("LSA") on May 24, 2010, providing that the church would seek damages and attorneys' fees from the City.  [Doc. 75, pg. 20].   In a section titled "Settlement," the LSA provides:  "Client agrees that the claim *will not be settled* for less than a substantial recovery of damages, attorneys' fees, costs and expenses, and the church retains the right to settle the case on terms [that] do not provide for the full payment of . . . attorneys' fees . . . *as long as Client pays fees earned* . . . instead."  [Doc. 75, pg. 21].  Thus, unlike a traditional contingency fee agreement, Mauck & Baker is contractually entitled to a "substantial recovery" – if not from the defendant then from its client.  In addition to entitling Mauck & Baker to 100% of attorneys' fees recovered, the LSA also entitled Mauck & Baker to one-third of all damages recovered.  [Doc. 71-1, pg. 3].

These terms of the LSA later proved significant when the City quickly agreed – within four business days of receiving notice of Appellant's RLUIPA claim – to allow Christ Liberty to return to its desired location.  The City was willing to pay actual damages and reasonable fees but refused to pay a huge settlement amount in attorneys' fees to Mauck & Baker.  The District Court found

that the leader of Christ Liberty, Pastor Rose Thomas, "was in a quandary":

> "In response to a question asking why she turned down the settlement offer of $15,000 after the church was back in the building, she said, 'I don't know.'   She could not say how much she wanted, only, 'If it's going to take everything— whatever it take[s] to get through with. I don't know.' She also said, 'I would allow the settlement [to] be between the lawyers [.] Thomas' satisfaction with being able to return to the building, compared with her hesitation to discuss a settlement figure reveals conflicted motivations as to the goals of her suit. Such hesitation is understandable, given that by the LSA's terms her church was on the hook for a six-figure (and escalating) legal bill." [Doc. 75, pg. 24 (internal citations omitted)].

### 3)  Mauck & Baker Bills the File But Does Not Seek Voluntary Compliance from the City

Without contacting the City or the City Attorney, "the plaintiff's counsel spent almost three months preparing to file the complaint and motion for preliminary injunction, during which time they amassed over $55,000 in attorneys' fees." [Doc. 75, pg. 17].  Mauck & Baker accumulated this hefty amount of hourly billing even though it had recently represented another plaintiff with substantially identical issues in *Kingdom First Ministries v. City of Atlanta*, No. 1:08-CV-3100, also in the Northern District of Georgia.  The District Court found that:

> "In [the Kingdom First] case, the complaint and motion for preliminary injunction are strikingly similar to the papers filed in this case. As the defendant here pointed out, **more than half the words in Christ Liberty's complaint are copied** from the complaint in the *Kingdom First* case, and the motions for injunction contain some of the **same**

**typographical errors.** The court's comparison of the documents shows that most of the same cases are cited, and even factual paragraphs describing the activities of the churches are remarkably similar." [Doc. 75, pg. 25 (internal citations omitted)(emphasis added)].

Through the combination of its LSA with Christ Liberty and its approach of billing a huge amount of fees without ever contacting the City to seek voluntary compliance, Mauck & Baker trapped Christ Liberty and the City in a suit over attorneys' fees, not religious liberties. The District Court found that Mauck & Baker:

> "essentially guaranteed that the tiny church would be completely unable to pay the accrued fees *without* obtaining a judgment against the City and being awarded attorneys' fees by the court. Then, any time the City offered any amount to settle the case, the plaintiff simply needed to ask for the current amount of the tab in order to [...] reject the settlement offer for fear it would be 'responsible' for the balance of attorneys' fees incurred as of that date." [Doc. 75, pg. 23].

### 4) The City's Response to Christ Liberty's Claims

Mauck & Baker never contacted the City regarding Christ Liberty's RLUIPA claims prior to filing suit on July 29, 2013. "As soon as the suit was filed—the first notice the City had of a legal challenge to its ordinance—the City consented not to the enforce the ordinance and soon after repealed it." [Doc. 75, pg. 17]. On August 10, the parties filed a proposed consent order. [Doc. 75, pg.

4].  A few days after the consent order was entered, the City's attorney wrote

Christ Liberty's attorney to inform him that the City had initiated amendment of its

zoning ordinance to remove the three-acre requirement and make religious

facilities "permitted" rather than "conditional" uses.  [Doc. 75, pgs. 5-6].  On

September 27, 2010, the City repealed Zoning Ordinance Section 818(1)(A).  Id.

"Christ Liberty resumed use of the building sometime after October 6, 2010, after

it had provided the City with proof that it had obtained a parking easement for off-

site parking and passed an inspection by the City's Fire Marshal."  [Doc. 75, pg. 4].

### 5)  Settlement Negotiations Between the Parties

About a week after the repeal of the City's ordinance to comply with

RLUIPA, Mauck & Baker wrote to the City with its position on damages.

Plaintiff/Appellant identified the church's primary damages as loss of constitutional

freedoms and civil rights (not including loss of income and consequential

damages).  Mauck & Baker claimed the value of these alleged damages to be

"between $409,500. . . and $2,452,500."  [Doc. 75, pg. 6-7]. At that time, Mauck &

Baker claimed around $80,000 in attorneys' fees.  [Doc. 75, pg. 7].  By November

16, 2010, Mauck & Baker claimed $90,000 in attorneys' fees, claiming they had

301 hours in the case at that point, but reduced its demand for damages to $60,000.

[Doc. 75, pg. 7].  On December 10, 2010, Plaintiff/Appellant's attorney, Mr.

Mauck, stated that the church would then accept $10,000 in damages but only if

the City would allow the parties to resolve the fees dispute separately. [Doc. 75, pg. 7]. The City insisted on a global settlement to resolve the case completely so it refused. [Doc. 75, pg. 7]. On January 7, 2011, the City "rejected the plaintiff's $80,000 offer to settle, conceded that the plaintiff was entitled to *some* amount of reasonable attorneys' fees, and offered $12,500 to settle all claims (including fees)." [Doc. 75, pg. 8]. On March 11, 2011, the City made an offer of judgment pursuant to Fed. R. Civ. P. 68(a) in the amount of $15,000. The plaintiff did not accept the offer. [Doc. 75, pg. 8].

The parties eventually filed motions for summary judgment with Plaintiff/Appellant claiming to be entitled to "constitutional damages" of $289,150 "as a matter of law" and the City arguing that the RLUIPA violation was not the proximate cause of any damage to Plaintiff because of its failure to comply with other legitimate legal regulations for the use of property. [Doc. 75, pg. 9]. The District Court rejected both contentions and found that the City was liable to Christ Liberty, but only for actual damages. [Doc. 75, pg. 9-10]. On March 13, 2012, "the parties filed a proposed agreed judgment order as to the church's damages only, in the amount of $5,700." [Doc. 75, pg. 10]. Subsequently, "the City offered to settle the attorneys' fees for $40,000 but Mauck & Baker rejected the offer." [Doc. 75, pg. 10].

### 6) The City was never hostile to Christ Liberty's desire to worship

Throughout this litigation Appellant's counsel has insisted upon mischaracterizing the City as a perpetrator of intentional discrimination without any factual support for such allegation. Mauck & Baker has repeatedly described the City as "hostile," "entrenched in an adversarial position" and bent upon preventing Christ Liberty from worshipping. In reality, however, City officials simply enforced their City Zoning Ordinance not knowing that the adoption of RLUIPA had rendered it illegal. The City never acted with any animosity towards Christ Liberty and tried to assist the Church within the constraints of the City's outdated ordinance. [Doc 51, pg. 2].

Perhaps Mauck & Baker's misapprehension on this fundamental point may be attributed to the fact that it conducted this litigation from Chicago, Illinois without ever meeting anyone associated with the City. Perhaps Mauck & Baker was simply intent on forcing a square peg into a round hole in an effort to bolster its pursuit of attorneys' fees. In any event, the District Court rejected Mauck & Baker's characterization of the City as stubborn and discriminatory. "The City's actual behavior demonstrates it was not 'hostile' to the Church once it knew of the legal basis of the Complaint: it immediately agreed not to enforce the ordinance and swiftly acted to repeal it." [Doc. 75, pg. 19].

### III.    ARGUMENT AND CITATION OF AUTHORITIES

**A. Legal Standard for fee-shifting**

**1)  The Intent of Section 1988**

Section 1988 allows district courts to shift attorneys' fees so that a prevailing plaintiff in a civil rights case will recover "reasonable" attorneys' fees from the defendant.  42 U.S.C. Section 1988.  Section 1988 is not intended to provide a bonanza for plaintiff's counsel.  Instead, plaintiff's counsel must exercise "billing judgment" as it would in private practice representing a paying client. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).  "The fee provisions in Sec. 1988…are intended to enable injured parties to obtain counsel, not to enable counsel to obtain munificent fees."  Lewis v. Kendrick, 944 F.2d 949, 956 (1st Cir. 1991).

The starting point for determining a reasonable fee to award to a prevailing party under Section 1988 is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Hensley at 433.  The amount resulting from multiplication of reasonable hours times a reasonable fee is referred to as the "lodestar." Bivens v. Wrap It Up Inc., 548 F.3d 1348, 1350 (11th Cir. 2008).  A district court is not bound to award all fees requested by a prevailing plaintiff's counsel.  Instead, a district court must examine the number of hours claimed and determine whether they are reasonable or not.  When a District Court

10

determines the number of hours claimed is unreasonably high, the Court may reduce the requested hours with an across-the-board cut, thereby arriving at a reduction of the lodestar.  Bivens at 1350; Padurjan v. Aventura Limousine Transp. Serv., Inc., 441 F. App'x 684 (11th Cir. 2011).

### 2) Factors for the District Court to Consider When Fee Shifting

The case of Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) established a list of twelve factors to be used by district courts when evaluating the reasonableness of the fees requested by a prevailing party's counsel. A district court is not required to discuss all twelve factors in detail so long as it considers them "as a whole."  Mock v. Bell Helicopter Textron, Inc., 456 F. App'x 799 (11th Cir. 2012).  In this case, the District Court discussed the Johnson factors as a whole at length throughout its opinion.  [Doc. 75, pgs. 11-37].  The District Court placed particular emphasis on three of the factors that it found illustrative of Mauck & Baker's unreasonableness, lack of billing discretion and grounds for an across-the-board reduction of the lodestar.

> a.  *Johnson factors two and three:  the novelty and difficulty of the questions presented and the skill requisite to perform the legal service properly.*

The District Court found that Christ Liberty's claims were not novel or difficult and did not particularly require a high level of skill to litigate.  [Doc. 75, pg. 18 (fn. 8) and pgs. 25-27].  Indeed, Mauck & Baker conceded in Mr. Mauck's

11

Declaration that this was a case of a "clear or RLUIPA violation" where the City "knows it must amend its zoning ordinance." [Doc. 75, pg. 18]. Moreover, this case clearly was not novel in that Mauck & Baker had previously filed pleadings in a very similar case in the same district and adapted them wholesale for use in the Christ Liberty matter. [Doc. 75, pgs. 25-27].

     b.  *Johnson factor six: whether the fee is fixed or contingent.*

The District Court found that Mauck & Baker's legal services agreement with Christ Liberty was not a true contingency fee because the agreement required Christ Liberty to pay attorney's fees to Mauck & Baker on an hourly basis whether or not plaintiff prevailed in the suit against the City. [Doc. 75, pg. 24]. The District Court found that Mauck & Baker's legal services agreement essentially ensnared Christ Liberty in litigation that it could not afford to exit and that this contributed to the unreasonableness of plaintiff's requested attorney hours. [Doc. 75, pg. 23].

     c.  *Johnson factor eight: the amount involved and the result obtained.*

It is undisputed that Mauck & Baker recovered less than $6,000. in damages for its client Christ Liberty. Mauck & Baker began the litigation by claiming that Christ Liberty was entitled to a huge amount of damages (even exceeding two million dollars). [Doc. 75, pg. 6-7]. Appellant's Motion for Summary Judgment

claimed it was entitled to $283,400.00 in damages as a matter of law. [Doc. 75, pg. 29]. The District Court found it significant that the eventual recovery for Christ Liberty was less than 1.4% of the low-end of the Mauck & Baker's estimate of damages that it contended it could "easily" recover in its October 7, 2010 demand letter. [Doc. 75, pg. 31].

### 3) The Abuse of Discretion Standard Applies to this on Appeal

Appellant claims at various points in its Brief that the District Court's fee award should be reviewed *de novo* by this Court. However, this Court has repeatedly held that it reviews the district court orders awarding attorney's fees for abuse of discretion. Norman v. Housing Authority of Montgomery, 836 F.2d 1292 (11th Cir. 1988); Padurjan, 441 F. App'x 684 (11th Cir. 2011). In fact, a district court has "wide discretion" in awarding attorney's fees so long as its order articulates its decision and gives principled reasons for the decision so as to allow for meaningful review. Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994); Norman, at 1304 (11th Cir. 1988).

This Court has effectively reserved *de novo* review for cases where a district court issues an order that does not fairly address the issues raised by the parties with regard to attorney's fees. For example, this Court performed an independent review in the case of ACLU of Georgia v. Barnes, 168 F.3d 423 (11th Cir. 1999), when the district court failed to respond to specific objections raised and issued an

order that consisted of mere conclusory statements regarding attorney's fees.  The

District Court's order in this case stands in stark contrast to the order in <u>ACLU of</u>

<u>Georgia</u>.  Here, the District Court directly addressed and rejected the key

contentions and arguments raised by Appellant on a point-for-point basis.

Moreover, far from consisting of mere conclusory statements, the District Court's

detailed Order itself effectively negates Appellant's argument that the District

Court's Order does not allow for meaningful review and therefore should be

subjected to a *de novo* review under the authority of <u>Norman</u> and related Circuit

precedent.

### 4)  The District Court Properly Exercised its Discretion

Fee applicants must exercise "billing judgment."  <u>Hensley v. Ekerhart</u>, 461

U.S. 424, 434 (1983).  The exercise of billing judgment requires a fee applicant to

exclude "excessive, redundant, or otherwise unnecessary" hours which would be

unreasonable to bill to a client.  <u>Norman</u> at 1301.  "If fee applicants do not exercise

billing judgment, courts are obligated to do it for them."  <u>ACLU of Georgia v.</u>

<u>Barnes</u>, 168 F.3d 423, 428 (11th Cir. 1999).  "Courts are not authorized to be

generous with money of others" and have a duty to exclude excessive requested

fees.  <u>Id</u>.[1]  In this case the District Court performed its duty to award a

---

[1] Appellee submits that this duty of the District Court is especially important where, as here, the
party against whom fees are sought are the citizens of a small community.

"reasonable" fee exactly as required by Eleventh Circuit precedent and such

decision should be afforded discretion and upheld.

### C.  Appellant's specific enumerations of error are without merit.

The District Court's Order is so thorough, precise and abundant in its

citation to controlling authorities that Appellee is tempted to simply adopt that

Order as its legal argument in response to Appellant's Brief.  Nonetheless,

Appellee will address the nine enumerations of error in the order that they were

presented in Appellant's Brief.

### 1.  Public Policy supports the District Court's across the board cut of Mauck & Baker's fee request

The City agrees with the public policy of funding civil rights litigation

through fee shifting as established by 42 USC § 1988.  Counsel that represents a

prevailing party in a civil rights case should be compensated "in the same manner

that an attorney is traditionally compensated by a fee-paying client for all time

reasonably expended on a matter."  Hensley v. Eckerhart, 461 US 424, 431 (1983).

Mauck & Baker's fee petition strayed far afield from requesting reasonable

compensation in "the manner that an attorney is traditionally compensated by a fee

paying client."  Mauck & Baker's priority was to maximize its fees rather than

vindicate Christ Liberty's civil rights.  This is perhaps best seen by examining

Mauck & Baker's actions during the first three months that elapsed after it was

hired by Christ Liberty. The District Court specifically determined that Mauck & Baker's approach of accumulating $55,000 in attorneys' fees without seeking voluntary compliance from the City was designed to protect Mauck & Baker's opportunity to accumulate a large fee and that "a paying client would not stand for such behavior." [Doc. 75, pg. 19]. In the meantime, Christ Liberty suffered "irreparable harm" (in Mauck & Baker's words) because it could not use its desired location.

Appellant complains that the public policy of §1988 is thwarted by the District Court's reduced award. However, Appellant ignores that the real public policy of §1988, in the context of RLUIPA, is to protect religious freedom. Surely one aspect of the applicable public policy is to encourage local government to comply with RLUIPA and not to punish a city that quickly acknowledges its error. The fee-shifting policy of §1988 and this public policy of RLUIPA are consistent so long as plaintiff's counsel does not seek to convert a city's outdated ordinance into a windfall for itself. The District Court properly performed its duty to shield the City from Mauck & Baker's excessive and exploitive fee request.

### 2. The District Court was not required to provide lodestar calculations for each attorney and paralegal

The District Court did in fact calculate a lodestar in its Order. The District Court effectively accepted Mauck & Baker's proposed hourly rates[2] and applied the same to the total number of hours requested for compensation in order to arrive at the "starting point" required by Hensley, supra. Appellant complains that the District Court did not individualize its calculations to each attorney and paralegal and pick apart every single entry in Mauck & Baker's submitted fee records. Such a burdensome task was not required. Appellant ignores the District Court's specific findings that "the billing records submitted in support of the fee petition [are] too voluminous to inspect on an hour by hour basis." [Doc. 75, pg. 15]. The submitted billing records consist of "fifty-five pages of miniscule text that is not searchable by computer", is "not organized or presented in a way that provides for meaningful, convenient, or item by item analysis" and "does not summarize or group the time entries by nature of the activity or stage of the case." Id.

After finding the "starting point" lodestar, the District Court applied an across-the-board percentage cut due to Mauck & Baker's failure to exercise billing discretion. A district court is authorized to apply an across-the-board cut to the lodestar when the billing records submitted are voluminous and not well prepared.

---

[2] Hourly rates are not an issue in this appeal but it is worth noting that Mauck & Baker charged a higher rate for its paralegal than the rate Appellee's lead counsel charged in this case. [Doc. 71-4, pg. 2].

Norman v. Blank, 836 F.2d 1303 and Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994). "The more than $200,000 [Appellant] seeks in attorneys' fees is indication enough that this case is voluminous." Padurjan v. Aventura Limousine, 441 F. App'x 684, 687 (11th Cir. 2011). An across-the-board cut rather than an hour-by-hour analysis has also been specifically endorsed by this Court when a district court determines that the number of hours claimed is unreasonably high (as the District Court did here). Bivens, 548 F.3d at 1350.

### 3. **The District Court properly considered Mauck & Baker's stubborn refusal to settle for less than a huge windfall of fees**

Appellant complains that the District Court should not have considered the history of settlement negotiations between the parties in assessing a reasonable attorney's fee award but provides no authority for this position. This contention is surprising and even disingenuous considering that it was Mauck & Baker that brought settlement negotiations between the parties to the District Court's attention in its Memorandum in Support of its Fee Petition. [Doc. 68-1, pg. 11 through 16]. Mauck & Baker even included settlement correspondence as Exhibits. [Doc. 68-12 through 68-16]. For Appellant to now contend that the District Court should not have considered these settlement negotiations reflects its lack of credibility rather than any error by the District Court.

Appellant misunderstands the District Court's Order when it argues that the District Court "used Norman's estimate as one of the bases in its determination to award, not cut, 16.7% of the fees requested." As the District Court explained, the 16.7% figure relative to Mauck & Baker's request for fees came from the City's offer of judgment for $40,000.00 on March 20, 2012, (which was approximately 16.7% of the demanded fees at that time). [Doc. 75, pg. 38]. The Court essentially used this figure of 16.7% of the requested fees as the low end percentage of the requested fees to award since the City was willing to pay such percentage. [Doc. 75, pg. 38]. The District Court then concluded that "considering all the factors and the principle role of the Plaintiff in prolonging the litigation due to its early unreasonable billing, the Court finds that an award at the low end of the considered range, 16.7%, constitutes a reasonable fee in this case." [Doc. 75, pg. 40].

### 4. The District Court did consider the public benefit achieved by Mauck & Baker through this litigation

The District Court specifically discussed the public benefit factor and "fully recognize[d] the public benefit of Christ Liberty's suit" in that the City voluntarily repealed the zoning ordinance provision that violated RLUIPA. [Doc. 75, pg. 33]. However, the District Court also found that "this valuable public benefit was obtained no later than September 27, 2010" and that:

> "the plaintiff obtained *no* additional public benefit in this litigation after that point, despite expending hundreds of hours

of attorney's time.  On the other hand, the primary obstacle to termination of this litigation was the plaintiff's exorbitant damages-including it's motion for summary judgment-and attorney's fees demands."  [Doc. 75, pg. 33].

Mauck & Baker may not like the District Court's holding regarding the limited public benefit achieved by its suit against the City but the District Court did not overlook this factor as claimed in Appellant's Brief.

Appellant's assertion that it was actually the City that prevented settlement in unnecessarily expanding the litigation is without merit.  To read Appellant's Brief one might come away with the impression that the District Court blamed the City for failure to settle the case and then somehow became confused when applying an across-the-board cut to Mauck & Baker's requested attorney's fees.  In reality, the District Court finding that the City contributed to prolonging the litigation was a minor factor considered by the Court in allowing Mauck & Baker to recover more than a "nominal" amount of attorney's fees.  [Doc. 75, pg. 36].  In fact, the District Court specifically found that "the City was justified in refusing to submit to a partial settlement of 'damages only' earlier in the case and separately litigating the attorney's fees issue."  Id.

Appellant's Brief emphasizes the District Court's finding that Appellant was justified in defending against the City's motion for summary judgment on causation grounds with bold and underlined type.  Appellant even suggests that it

20

was the City's refusal to enter into a bifurcated settlement that necessitated the summary judgment phase of this case.  Of course, this argument completely omits the fact that Appellant made a motion for summary judgment as well.  It was Appellant's motion for summary judgment that the District Court specifically found to be a "pursuit of unnecessary claims and over blown damages" by Mauck & Baker.  [Doc. 75, pg. 28].  It was Appellant's motion for summary judgment that "spent almost 14 pages arguing that the City violated the Church's rights under RLUIPA" even though "the City had admitted its ordinances violated RLUIPA and already repealed them."  Id.  It was Appellant's motion for summary judgment that argued that it "was entitled – *as a matter of law* – to damages for loss of constitutional rights in the amount of $283,400.00."  [Doc. 75, pg. 29-30].  Appellant made this argument  in the face of U.S. Supreme Court authority holding that such a remedy does not exist.  Memphis County. Sch. Dist. v. Stachura, 477 U.S. 299, 310 (1986).  The District Court easily concluded that Plaintiff/Appellant's theory of damages "has no basis in law."  [Doc. 75, pg. 29].

Finally, the statement in Appellant's Brief that "virtually all of attorney McCoy's time was devoted to discovery and summary judgment" is placed in a misleading context to imply that this discovery and summary judgment time was only in response to the City's motion for summary judgment.  In fact, it was

actually Plaintiff's theories of damages that comprised the majority of the summary judgment time expended on both sides of the litigation.

### 5. The District Court properly considered the miniscule amount of damages recovered by Mauck & Baker for Christ Liberty

Appellant continues to insist that it achieved "excellent results" in this case even though the District Court held that Mauck & Baker's mercenary focus on its own fees and the small recovery achieved for its client are "not the 'excellent results' contemplated by Hensley." [Doc. 75, pg. 40]. In Mauck & Baker's view, the District Court placed undue emphasis on the tiny damages recovery of less than $6,000.00 that it achieved for Christ Liberty. However, it is appropriate for a district court to consider the limited success of a litigant when fee shifting. Villano v. City of Boynton Beach, 254 F.3d 1302. The District Court was following Eleventh Circuit precedent when it concluded that "the partial success the plaintiff ultimately received in obtaining a damages judgment of less than 2% of the amount that it had contended it was entitled to as a matter of law, even though the full public benefit was realized long before, weighs heavily in favor of a large reduction of the lodestar." [Doc. 78, pg. 40].

Appellant's Brief argues that the ratio of damages recovered for the client is not important and that it was an error for the District Court to consider such factor. However, the Eleventh Circuit precedent directly refutes this position. Johnson at

717-719; <u>Popham v. City of Kennesaw</u>, 820 F. 2d 1570, 1581 (11th Cir. 1987)(approving 67% fee reduction where plaintiff recovered only 1.5% of damages sought).  "Taken to its logical limit, [Appellant's] argument would make Section 1988 awards full and automatic."  <u>Villano</u> at 1305.  The District Court was simply unwilling to award Mauck & Baker a "windfall" in light of its marginal success on behalf of its client and its finding that Mauck & Baker did not conduct the litigation in good faith.  [Doc. 75, pg. 32; 35].

### 6. The District Court properly considered Mauck & Baker's failure to pursue pre-suit settlement

The District Court found that it was unreasonable for Mauck & Baker to wait three months and bill $55,000.00 in attorney's fees before making any contact with the City on behalf of its client.  Mauck & Baker claims that this was a strategic decision in the best interest of Christ Liberty because of a phenomenon that it refers to as "reductive equalization".  Mauck & Baker argues that, if it had pointed the City to the authority of RLUIPA and asked for voluntary compliance, the City would have then amended its zoning ordinance to exclude all assemblies from lots less than three acres rather than allowing religious assemblies on less than three acres of land.[3]  The District Court fully rejected this argument, finding it

---

[3] In the District Court, Appellant referred to this euphemistically as "sticking it to the church"; thus that Court's conclusion that "a city can just as easily 'stick it to the church' *after* the case is filed." [Doc. 75, pg. 18].  It is worth noting again here that the City did <u>not</u> "stick it to" Christ Liberty even though it had the legal right to do so.

to be "neither credible nor persuasive." [Doc. 75, pg. 18].   Appellant continues to point to the case of <u>Covenant Christian Ministries, Inc. v. City of Marietta,</u> 654 F.3d 1231 (11th Cir. 2011) as justification for its failure to seek voluntary compliance.   As the District Court observed, <u>Covenant Christian</u> holds that a local government is free to enact "reductive equalization" <u>after</u> a suit is filed or before suit.

The District Court accurately concluded that Mauck & Baker's approach of not making pre-suit contact with the City did not protect its client's rights but was a gambit to ensure "prevailing party" status for purposes of fee shifting under Section 1988. [Doc. 75, pg. 19].  Moreover, even if Mauck & Baker's illogical position concerning "reductive equalization" were correct, this is no justification for claiming $55,000.00 in attorney's fees for lightly adapting the pleadings from a similar case.  If Mauck & Baker had a legitimate concern about "reductive equalization," why did it not file a simple notice pleading complaint to preserve its client's rights?  How does Mauck & Baker explain its decision to bill such a large amount for a complaint and motion for preliminary injunction that is "strikingly similar to papers filed" in the prior case?  [Doc. 75, pg. 25].

Mauck & Baker's suggestion of a need to remain hidden from the City to avoid "reductive equalization" is built upon the false premise that the City was "openly hostile" to Christ Liberty.  There was never any such hostility.  See

Section II(6), supra.  In response to this same argument, the District Court made a direct factual finding that "the City's actual behavior demonstrates it was not 'hostile' to the church once it knew of the legal basis of the complaint:  it immediately agreed not to enforce the ordinance and swiftly acted to repeal it." [Doc. 75, pg. 19].  Similarly, Appellant's specific complaints about the City's alleged refusal to accept a conditional use permit application are unpersuasive. Appellant's Brief cites only a self-serving declaration as support for its contention. Whether or not Christ Liberty submitted a conditional use permit was a disputed fact that the District Court resolved against Appellant, finding that Christ Liberty "did not apply for a conditional use permit."  [Doc. 75, pg. 2].

### 7.  The District Court properly considered the terms of the legal services agreement between Mauck & Baker and Christ Liberty

The District Court held that Mauck & Baker's LSA with Christ Liberty discouraged billing judgment by Mauck & Baker and discouraged the client from settlement.  [Doc. 75, pg. 20-24].  Appellant's Brief does not provide any authority suggesting that it is inappropriate for a District Court to consider a legal services agreement in the context of a petition for attorney's fees.  In fact, the contingency nature of a legal services agreement is one of the specifically enumerated <u>Johnson</u> factors that a District Court is directed to consider.  <u>Johnson</u>, 488 F.2d at 718.  In this case the District Court appropriately  "considered the non-contingent nature of

the legal services agreement -- the client's obligation to 'agree to pay' the firm's fees -- in evaluating the reasonableness of the hours expended." [Doc. 75, pg. 24].

**8.  The District Court was justified in finding a selfish, inequitable motive on Mauck & Baker's part to maximize its attorney's fees**

The District Court concluded that Mauck & Baker purposefully expanded the litigation in order to increase its attorney's fees claim to the detriment of its client.  This conclusion is well supported in the record.  The District Court specifically found that:

a.  Mauck & Baker did not attempt to achieve voluntary compliance prior to suit but the City did voluntarily comply with RLUIPA when given the chance [Doc. 75, pg. 17];

b.  The "high amount of accumulated unreasonable attorney's fees" that Mauck & Baker claimed on its first contact with the City blocked settlement [Doc. 75, pg. 27];

c.  Mauck & Baker was eager to compromise its client's damages claim but loath to compromise its attorney's fees claim [Doc. 75, pg. 39];

d.  Mauck & Baker trapped their client in litigation over attorney's fees when Christ Liberty's Pastor Rose Thomas was "very pleased" with the City allowing her church to promptly return to its building. [Doc. 75, pg. 24].

In light of this exploitive behavior, the conclusion that Mauck & Baker acted with a selfish, inequitable motive is inescapable, not erroneous.

Appellant's Brief complains about the District Court weighing Mauck & Baker's repurposing of pleadings from another case as a factor against awarding the requested fees.  However, this Court has specifically endorsed cutting requested hours when attorneys repurpose pleadings from another case.  A.C.L.U. of Georgia v. Barnes, 168 F. 3d 423 (1999).  "An attorney is not entitled to be paid in a case for the work he or another attorney did in some other case."  Id. at 430.  It would be an abuse of discretion not to exclude such hours.  Id.

### 9.  There is no justification for remanding this case to a different District Court judge

Appellant's Brief acknowledges that there is no precedent in the Eleventh Circuit that supports its unusual request for remand to a different District Court judge.  Frankly, it is telling that Mauck & Baker does not want to return to face the trial judge most familiar with its conduct in this case.  It is apparent from Mauck & Baker's handling of this case at the district court level and on appeal that it views any local zoning ordinance made illegal by RLUIPA as a license to bill.  It is implicit throughout Appellant's Brief that Mauck & Baker expects a district court to not look below the surface of its "prevailing party" status or its voluminous and inflated billing records.  Unfortunately for Mauck & Baker, Judge Pannell did look

below the surface.  The District Court's Order provides a persuasive rationale for

its decision that the requested fees were unjustified.  This Court's precedent that

"the District Court is in the best position to evaluate the effect the facts of a given

case should have on the fee request" obviously refers to the trial judge that receives

the evidence.  <u>Canup v. Chipman-Union, Inc.</u>, 123 F. 3d 1440, 1444 (11th Cir.

1997).

## IV.    CONCLUSION

In Appellant's request for oral argument, Mauck & Baker bemoans the

District Court's award of $50,340.36 in fees and expenses as a "grave injustice".

Appellant deems the District Court decision an "outlier" that "will discourage

competent attorneys from taking §1988 cases".  The true outlier in this case is

Mauck & Baker's scheme to ensnare a local government and its own client in an

attorneys' fees trap.  Such is the conduct that this Honorable Court should take the

opportunity to discourage through its decision in this case.

Rather than working to restore Christ Liberty to worship as efficiently as

possible, Mauck & Baker seized upon a well meaning Act of Congress intended

"to protect religious liberty" and twisted RLUIPA for its own pecuniary gain at the

expense of its own client and a small city caught unaware.  Mauck & Baker

intentionally created a perverse incentive to expand the case beyond its client's

purposes, took away Christ Liberty's authority to settle its own case, and

undermined judicial economy as well as public policy.  The District Court's Order was thorough, well reasoned and well within its discretion.  Such award should not be disturbed on appeal.

    Respectfully submitted this 6th day of September, 2013.

           WILSON, MORTON & DOWNS, LLC

           /s/Stephen G. Quinn
           Robert E. Wilson
           Georgia Bar No. 768950
           Stephen G. Quinn
           Georgia Bar No. 153012

           Counsel for Appellee
           City of Avondale Estates, Georgia

125 Clairemont Avenue, Suite 420
Decatur, GA 30030
(404) 377-3638
(404) 377-3533

Docket No. 13-11815-FF
Christ Liberty Family Life Center v. City of Avondale Estates, GA

## <u>CERTIFICATE OF INTERESTED PERSONS</u>
## <u>AND CORPORATE DISCLOSURE STATEMENT OF</u>
## <u>CITY AVONDALE ESTATES, GA</u>

Counsel for City of Avondale Estates, GA hereby certifies that the following is a full and complete list of all judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held corporation that owns 10% or more of a party's stock:

- Christ Liberty Family Life Center, Appellant

- City of Avondale Estates, GA, Appellee

- Mauck & Baker, LLC, counsel for Appellant

- Mauck, John, counsel for Appellant

- Norman, Andy, counsel for Appellant

- Pannell, Charles A., U.S. District Judge, ND GA

- Quinn, Stephen G., Counsel for Appellee

- Wilson, Morton & Downs, LLC, counsel for Appellee

- Wilson, Robert E., counsel for Appellee

C-1 of 1

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

## CERTIFICATE OF SERVICE

## Christ Liberty Family Life Center v. City of Avondale Estates, Georgia
## Appeal No. 13-11815

I hereby certify that on the 6th day of September, 2013, a true and correct copy of the foregoing Appellee's Brief has been electronically filed with the CM/ECF system and has been mailed via FedEx to the persons whose names and addresses are listed below:

John W. Mauck
Andy Norman
Noel W. Sterett
Mauck & Baker, LLC
One N. LaSalle St., Suite 600
Chicago, IL 60602

/s/ Stephen G. Quinn_____
Defendant-Appellee's Attorney

Robert E. Wilson
Stephen G. Quinn
Wilson, Morton & Downs, LLC
125 Clairemont Avenue, Suite 420
Decatur, GA 30030
(404) 377-3638
Georgia Bar No. 153012